**SO ORDERED.**

**SIGNED this 9 day of May, 2013.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION**

IN RE:

B&K COASTAL, LLC,                                    CASE NO. 11–08609–8–JRL

    DEBTOR.                                              CHAPTER 11

---

B&K COASTAL, LLC,

    PLAINTIFF,                                          ADVERSARY PROCEEDING NO.
                                                            12–00287–8–JRL

    v.

PROMENADE AT SURF CITY, LLC,

    DEFENDANT.

**ORDER**

This matter came before the court on the motion to dismiss filed by Promenade at Surf City, LLC ("defendant") for failure to state a claim upon which relief may be granted, which B&K Coastal, LLC d/b/a Cape Fear Paving ("plaintiff") has opposed. At the conclusion of the hearing held on April 10, 2013 in Raleigh, North Carolina, the court took the matter under advisement.

1

## BACKGROUND[1]

The plaintiff, a North Carolina limited liability company located in New Hanover County, North Carolina, specializes in highway construction and site improvement. The defendant, a North Carolina limited liability company with its principal place of business in Pender County, North Carolina, began development of Surf City Promenade located at the intersection of Highway 50 and Highway 210 in Surf City, North Carolina ("project") in 2009. After plans for the project were drafted in January 2010, the defendant solicited bids to perform the work from several contractors, including the plaintiff. The plaintiff and defendant entered into an agreement, made as of January 5, 2010, whereby the plaintiff would provide site work, including grading, erosion control, storm drainage, sewer, paving and utilities for the project ("site contract"). Under the site contract, the defendant agreed to pay the plaintiff $1,280,000.00 and all work was to be completed by July 8, 2010, with the exception of certain portions specifically referenced.

On April 29, 2010 and July 20, 2010, the parties entered into separate agreements for the construction of turn lanes on Highway 50 ("Hwy 50 contract") and Highway 210 ("Hwy 210 contract"), respectively. Under the Hwy 210 contract, the defendant was required to pay the plaintiff $186,545.00 in exchange for the plaintiff's completion of its obligations thereunder by September 15, 2010. The Hwy 210 contract called for the defendant to make progress payments throughout the course of the project, with the final payment made upon completion of the work and certification by the North Carolina Department of Transportation ("NCDOT").

On January 28, 2011, counsel for the defendant sent plaintiff's counsel a letter indicating that

---

[1]These facts are a fair distillation of the allegations in the complaint, which is viewed in a light most favorable to the trustee. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

it was the defendant's position that the plaintiff was in material breach of the site contract, the Hwy 50 contract and the Hwy 210 contract ("January 28 letter").[2] With respect to the Hwy 210 contract, the letter provided as follows:

> **July 20, 2010 Contract – Surf City Promenade, 210 Turn Lane ("Highway 210 Turn Lane Contract")**
>
> The Highway 210 Contract is for $186,545.00. To date Promenade at Surf City has paid Cape Fear [or the plaintiff] the sum of $45,972.00 for work performed under this contract, leaving a contract balance of $140,573.00. In lieu of terminating the Highway 210 Contract, Promenade at Surf City is willing to escrow the contract balance of $140,573.00 in my trust account with a payment of $50,000.00 to be paid on February 1, 2011. I will provide you with verification of receipt of the funds. The remaining balance of the contract in the amount of $90,573.00 will be paid upon completion of the work and acceptance by the NCDOT.

(emphasis in original).

Thereafter, the plaintiff completed the work required under the Hwy 210 contract and received confirmation from the NCDOT on August 2, 2011. The plaintiff posted the required bond to be held by the NCDOT until the expiration of the one–year warranty period. Pursuant to the Hwy 210 contract, the plaintiff received the necessary engineer certifications and a final inspection found the work to be satisfactorily completed.

The plaintiff filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on November 9, 2011. The multi–count complaint initiating this adversary proceeding was filed by the plaintiff on November 15, 2012 against the defendant, asserting five separate claims for relief: (1) breach of contract; (2) unjust enrichment; (3) fraud; (4) fraud in the inducement; and (5)

---

[2]The January 28 letter also indicated that the plaintiff had not paid at least one subcontractor, Stroud Engineering, P.A. ("Stroud"), for work previously performed in connection with the project. Stroud informed the defendant that there was a past due balance of approximately $36,871.41 and a current balance due of $5,240.77 for work it performed for the plaintiff in connection with the site contract, the Hwy 50 contract and the Hwy 210 contract.

3

violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75–1.1 et seq. On January 14, 2013, the defendant filed an answer, which included several counterclaims and the motion to dismiss currently before the court. In its motion to dismiss and accompanying memorandum of law, the defendant asserts that the plaintiff's second, third, fourth and fifth claims for relief fail to state claims upon which relief may be granted and, therefore, must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012. The plaintiff filed a reply and answer to the counterclaims asserted by the defendant on March 7, 2013. On April 1, 2013, the defendant filed a memorandum of law in opposition to the defendant's motion to dismiss.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 8(a)(2), every pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008. A party may move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss a claim for relief in any pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. A motion to dismiss tests the legal and factual sufficiency of the complaint. Id.; Kelly v. Georgia–Pac. LLC, 671 F. Supp. 2d 785, 790 (E.D.N.C. 2009) (citations omitted); Jones v. McNutt Serv. Grp., Inc., No: 5:10–CV–84, 2010 WL 3733027, at *1 (E.D.N.C. July 23, 2010) ("In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for 'failure to state a claim upon which relief can be granted,' a court must determine whether the complaint is legally and factually sufficient." (citations omitted)). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Angell v. Ber

Care, Inc. (In re Caremerica, Inc.), 409 B.R. 737, 745 (Bankr. E.D.N.C. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Iqbal, 556 U.S. at 678 (internal citations and quotation marks omitted). The court construes "the facts in the light most favorable to the plaintiff," however, it "need not accept the legal conclusions drawn from the facts , , , [or] unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (citations omitted).

Under Fed. R. Civ. P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). To comply with this particularity requirement, a plaintiff must plead the "time, place, and contents of the alleged fraudulent representation, as well as the identity of each person making the misrepresentation and what was obtained thereby." Riley v. Murdock, 828 F. Supp. 1215, 1225 (E.D.N.C. 1993).

The court, in analyzing a Rule 12(b)(6) motion to dismiss, considers "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). Additionally, "when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." Am. Chiropractic Ass'n v. Trigon Healthcare,

Inc., 367 F.3d 212, 234 (4th Cir. 2004) (quotation and alterations omitted); see Braun v. Maynard, 652 F.3d 557, 559 n. 1 (4th Cir. 2011).

## DISCUSSION

The defendant, in its motion to dismiss, asserts that the plaintiff's second, third, fourth and fifth claims for relief fail to plausibly demonstrate entitlement to relief and, therefore, must be dismissed.

### A. Unjust Enrichment

The defendant asserts that, based on Deltacom, Inc. v. Budget Telecom, Inc., No. 5:10–CV–38, 2011 WL 2036676 (E.D.N.C. May 22, 2011) and the existence of the Hwy 210 contract, the plaintiff is precluded from seeking recovery under a theory of unjust enrichment.

Unjust enrichment is an equitable remedy based on a quasi–contract or a contract implied in law. See Ron Medlin Const. v. Harris, 364 N.C. 577, 704 S.E.2d 486, 489 (2010). A quasi–contract or a contract implied in law is not a contract; instead, it is a remedy "imposed by law to prevent an unjust enrichment." Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). "Only in the absence of an express agreement of the parties will courts impose a quasi contract or a contract implied in law in order to prevent an unjust enrichment." Paul L. Whitfield, P.A. v. Gilchrist, 348 N.C. 39, 42, 497 S.E.2d 412, 415 (1998); accord Booe, 322 N.C. at 570, 369 S.E.2d at 556 ("If there is a contract between the parties the contract governs the claim and the law will not imply a contract."). Therefore, "a claim for unjust enrichment may not be brought in the face of an express contractual relationship between the parties." Pan–American Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 696 (M.D.N.C. 2011) (citation omitted); see Augustson v. Bank of Am., N.A., 864 F. Supp. 2d 422, 438 (E.D.N.C. 2012) (holding that the

6

plaintiffs could not recover under a theory of unjust enrichment where the parties had an express contract).

> The law of unjust enrichment in North Carolina proceeds from the general principle that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." Booe v. Shadrick, 322 N.C. 567, 369 S.E.2d 554, 555–556 (1988) (internal quotations omitted). In order to prevail on a claim for unjust enrichment, a plaintiff must prove that (1) it conferred a benefit on the defendant, (2) the benefit was not conferred officiously or gratuitously, (3) the benefit is measurable, and (4) the defendant consciously accepted the benefit. Id. at 556. An unjust enrichment claim is available only in the absence of an express contract between the parties. Id.

Metric Constructors, Inc. v. Bank of Tokyo–Mitsubishi, Ltd., 72 Fed. App'x 916, 920 (4th Cir. 2003) (unpublished).

The Deltacom decision relied upon by the defendant is analogous to the instant case. The parties in Deltacom executed a non–exclusive partner agreement whereby the defendant was to receive certain commission payments in return for utilizing its marketing and sales efforts to secure customers for the plaintiffs. 2011 WL 2036676, at *1. Shortly after the defendant refused to execute a new agreement with a less favorable commission structure, the plaintiffs terminated the partner agreement and ceased paying commissions to the defendant. Id. at *2. The plaintiffs commenced a civil action against the defendant in state court, which was subsequently removed to the United States District Court for the Eastern District of North Carolina, seeking compensatory damages for breach of contract and a declaration that it had properly terminated the partner agreement. Id. at *1. In response, the defendant raised several counterclaims against the plaintiffs including, claims for quantum meruit and unjust enrichment arising from the parties' partner agreement. Id. On the plaintiffs' motion for judgment on the pleadings, the court observed that the defendant's counterclaims for quantum meruit and unjust enrichment "incorporate by reference all

7

of the allegations of the rest of the answer (including those alleging the existence of an express contract), and are not explicitly pleaded 'in the alternative.'" Id. at *6 (emphasizing that the "[d]efendant acknowledge[d] that the Partner Agreement was executed between the parties, d[id] not deny the existence or validity of the Partner Agreement, and repeatedly cite[d] to the provisions of the agreement in its allegations."). The court in Deltacom allowed the plaintiffs' motion for judgment on the pleadings as to the defendant's quantum meruit and unjust enrichment counterclaims because the defendant's express incorporation of allegations relating to the existence and validity of the partner agreement made its alternative allegations of quantum meruit and unjust enrichment implausible. Id.; see Madison River Mgmt. Co. v. Bus. Mgmt. Soft. Corp., 351 F. Supp. 2d 436, 446 (M.D.N.C. 2005) ("[B]ecause all of the facts pleaded . . . allege there is an express contract between the parties, [one] cannot now claim the existence of an implied contract.")

In addition to affixing a copy of the contract to the complaint, all the facts alleged therein establish the existence and validity of the Hwy 210 contract between the parties and, therefore, the plaintiff cannot subsequently claim the existence of an implied contract. See, e.g., Deltacom, 2012 WL 2036676, at *6; Madison River Mgmt., 351 F. Supp. 2d at 446; Se. Shelter Corp. v. BTU, Inc., 154 N.C. App. 321, 330–31, 572 S.E.2d 200, 206–07 (2002) (holding that where all the evidence demonstrates that the parties entered into a contract, a plaintiff will not be able to maintain a claim for unjust enrichment). As in Deltacom, the complaint expressly incorporates all of the prior allegations relating to the existence of the Hwy 210 contract, which made its unjust enrichment claim implausible. Accordingly, the plaintiff's second claim for relief, alleging unjust enrichment, is dismissed for failure to state a claim upon which relief may be granted.

### B. Fraud and Fraud in the Inducement

The defendant argues that the plaintiff's third and fourth claims for relief for fraud and fraud in the inducement should be dismissed for failing to state, with particularity, the circumstances constituting fraud pursuant to Fed. R. Civ. P. 9(b) and Fed. R. Bankr. P. 7009.

Under North Carolina law, to prove fraud or fraud in the inducement, a plaintiff must establish "(1) [f]alse representation or concealment of a past or existing material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Whisnant v. Carolina Farm Credit, 204 N.C. App. 84, 94–95, 693 S.E.2d 149, 156–57 (2010) (citations omitted); see, e.g., Phelps–Dickson Builders, LLC v. Amerimann Partners, 172 N.C. App. 427, 437, 617 S.E.2d 664, 670 (2005) (fraud); Harton v. Harton, 81 N.C. App. 295, 298–99, 344 S.E.2d 117, 119–20 (1986) (fraud in the inducement). Additionally, the injured party's reliance on the fraudulent representation or concealment must have been reasonable. Hudson–Cole Dev. Corp. v. Beemer, 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999) (indicating that such reliance is unreasonable when the party "could have discovered the truth upon inquiry."). "A claim for fraud may be based on an affirmative misrepresentation of a material fact, or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose." Whisnant, 204 N.C. App. at 94–95, 693 S.E.2d at 156–57 (citations and emphasis omitted). An intent to deceive requires "both knowledge and an intent to deceive, manipulate or defraud[,]" Malone v. Topsail Area Jaycees, Inc., 113 N.C. App. 498, 502–03, 439 S.E.2d 192, 195 (1994) ("Without the intent to deceive, the required scienter for fraud is not present."(emphasis and citation omitted); however, "reckless indifference to the truth is insufficient to satisfy this element." William L. Thorpe Revocable Trust v. Ameritas Inv. Corp., No.

4:11–CV–193, 2012 WL 4193096, at *9 (E.D.N.C. Sept. 19, 2012) (citations omitted).

"[A] mere promissory representation will not be sufficient to support an action for fraud [unless] . . . it is made with intent to deceive the promisee, and the promisor, at the time of making it, has no intent to comply." Johnson, 300 N.C. at 255, 266 S.E.2d at 616. As to the basis for fraud – the defendant's promise to pay all sums owed under the Hwy 210 contract upon completion of the work required under the contract and acceptance of the same by the NCDOT – the plaintiff must plausibly demonstrate that the defendant did not intend to honor the promise when the representations in the January 28 letter was made. The complaint asserts that in the January 28 letter, the defendant falsely represented that it would render payment of all sums owed under the Hwy 210 contract, $90,573.00, upon the plaintiff's completion of the work and acceptance by the NCDOT. These representations, according to the complaint, also induced the plaintiff to complete performance of the Hwy 210 contract. The defendant's imposition of an additional requirement following completion and acceptance of the work by the NCDOT – certification that the work complied with the projects plans by one of the defendant's engineers as a condition of final payment of all sums owed to the plaintiff – was conduct that amounts to fraud and fraud in the inducement.

These allegations are insufficient for the court to plausibly infer that the defendant knew the representations it made in the January 28 letter concerning the Hwy 210 contract were intended to deceive, manipulate or defraud the plaintiff. Here, the plaintiff has failed to allege that the defendant knew the representations concerning the Hwy 210 contract were false and intended to deceive the plaintiff. See Meekins v. Box, 152 N.C. 379, 567 S.E.2d 422 (2002) (holding that a pattern of deceit to the injured party, creditors and to the court established a an intent to deceive). Likewise, there

is no indication that the defendant did not fully intend to honor the representations it made in the January 28 letter by paying the plaintiff upon completion of the work and acceptance by the NCDOT. Absent any allegations of a specific intent to deceive, the defendant's "mere unfulfilled promises cannot be made the basis for an action of fraud." Williams v. Williams, 220 N.C. 806, 810, 18 S.E.2d 364, 366 (1942) (citation omitted).

Based on the record, the court finds that the plaintiff has failed, as a matter of law, to plead facts to support an inference that the representations made by the defendant in the January 28 letter amounted to fraud or fraud in the inducement . Accordingly, the defendant's motion to dismiss the plaintiff's third (fraud) and fourth (fraud in the inducement) claims for relief is allowed.[3]

### C. Unfair & Deceptive Trade Practices

The UDTPA prohibits "[u]nfair methods of competition . . . and unfair deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75–1.1(a); see Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 519 (4th Cir. 1999) (indicating that the primary purpose of the UDTPA is "to protect the consuming public" by granting "a private cause of action to consumers aggrieved by unfair and deceptive business practices."); Deltacom, 2011 WL 2036676, at *4 ("Unfair trade practices involving businesses are actionable where they affect the consumer as well, but only when the businesses are competitors or are engaged in commercial dealings with each other."(citing Food Lion, 194 F.3d at 519–20)). To state a claim for relief under the UDTPA, the plaintiff must demonstrate (1) an unfair or deceptive practice or act (2) in or affecting commerce (3)

---

[3]Having determined that the plaintiff has failed to state claims for fraud and fraud in the inducement upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), the court need not address the defendant's alternative ground for dismissal, that claims are barred by the economic loss rule.

11

which proximately caused actual injury to the plaintiff.  See, e.g., N.C. Gen. Stat. § 75–1.1; Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001).  Whether a particular act or practice constitutes an unfair and deceptive trade practice varies based on the circumstances, Goodrich v. Rice, 75 N.C. App. 530, 535, 331 S.E.2d 195, 198 (1985); however, the conduct "must be immoral, unethical, oppressive, unscrupulous or substantially injurious . . . ." Kelly, 671 F. Supp. 2d at 798–99 (citations omitted); Johnson, 300 N.C. at 265, 266 S.E.2d at 621–22 ("A practice is unfair when it offends established public policy as well as the when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious . . . .").[4]  An act's unfairness or deception is gauged by "[t]he effect of the actor's conduct on the marketplace." Ken–Mar Finance v. Harvey, 90 N.C. App. 362, 365, 368 S.E.2d 646, 648 (1988).

Under North Carolina law, "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UDTPA,] N.C.G.S. § 75–1.1." Broussard v. Meineke Disc. Muffler Shops, Inc.,155 F.3d 331, 347 (4th Cir. 1998) (quoting Branch Banking & Trust Co. v. Thompson, 107 N.C. App. 53, [62,] 418 S.E.2d 694, 700 (1992)); accord Bartolomeo, 889 F.2d at 535; United Roasters, Inc. v. Colgate Palmolive Co., 649 F.2d 985, 992 (4th Cir.)

---

[4]Unfairness under the UDTPA is "conduct 'which a court of equity would consider unfair.'" Harrington Mfg. Co. v. Powell Mfg. Co., 38 N.C. App. 393, 248 S.E.2d 739, 744 (1979) (quoting Extract Co. v. Ray, 221 N.C. 269, 273, 20 S.E.2d 59, 61 (1942)).  The Fourth Circuit observed in Bartolomeo v. S.B. Thomas, Inc. that "[o]ne need not show that he was actually deceived to prevail under the [North Carolina Unfair and Deceptive Trade Practices] Act, as long as 'the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception.' " 889 F.2d 530, 534 (4th Cir. 1989) (quoting Chastain v. Wall, 78 N.C. App. 350, 337 S.E.2d 150, 154 (1985)); see Overstreet v. Brookland, Inc., 52 N.C. App. 444, 279 S.E.2d 1, 7 (1981).  In Process Components, Inc. v. Balimore Aircoil Co., the North Carolina Court of Appeals held that a manufacturer's promise to the plaintiff for an exclusive distributorship was sufficiently deceptive when the promise was made while the manufacturer remained bound to another distributor.  89 N.C. App. 649, 654, 366 S.E.2d 907, 911 (1988).

("Whatever the limit of their reach, however, the words must mean something more than an ordinary contract breach. In a sense, unfairness inheres in every breach of contract . . . ."), cert. denied, 454 U.S. 1054 (1981). Plaintiffs must "show substantial aggravating circumstances attending the breach [of contract] to recover under the [UDTPA], which allows for treble damages." Bartolomeo, 889 F.2d at 535 (citation omitted); see generally Matthew W. Sawchak & Kip D. Nelson, Defining Unfairness in "Unfair Trade Practices," 90 N.C. L. Rev. 2033, 2049–50 (Sept. 2012). "[D]eception either in the formation of the contract or the circumstances of the breach" may supply the "'substantial aggravating circumstances' that would justify [an] extraordinary treble damages recovery [under the UDTPA]." Id.; see S. Atl. Ltd. v. Riese, 284 F.3d 518, 535–36 (4th Cir. 2002); Curtis B. Pearson Music Co. v. Everitt, 368 F. App'x 450, 456 (4th Cir. Mar. 2, 2010) (unpublished) ("Misunderstandings, despite their capacity to deceive, ordinarily are insufficient to sustain a claim of deceptive conduct under the UDTPA."); Terry's Floor Fashions, Inc. v. Georgia–Pac. Corp., No. 5:97–CV–683, 1998 WL 1107771, at *10 (E.D.N.C. July 23, 1998) (emphasizing that a breach of contract claim cannot be converted into one for unfair and deceptive trade practices by "'artfully pleading' the appropriate legal language for such a claim." (citations omitted)).

The defendant contends that the plaintiff has not shown substantial aggravating circumstances accompanying the breach of contract to warrant imposition of liability under the UDTPA. Therefore, the decisive issue is whether the facts constitute substantial aggravating circumstances attending the alleged breach to permit the plaintiff to state a cognizable claim under the UDTPA. Aggravating circumstances include conduct of the breaching party that is egregiously unfair or deceptive; however, the aggravating circumstances must be substantial and independent of the performance of the parties' obligations under the existing contract. See, e.g., PCS Phosphate

Co., Inc. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009) (holding that threats involving a dispute regarding the parties' obligations under the existing contract did not rise to the level of "substantial aggravating circumstances" to support an UDPTA claim); Bartolomeo, 889 F.2d at 535–36 (finding no substantial aggravating circumstances existed where a plaintiff claimed that his employer allegedly breached an oral agreement by deceiving him about the status of their distributorship); Big Red, LLC v. Davines S.P.A., 31 F. App'x 216, 225 (4th Cir. 2002) (unpublished) (holding that manufacturer's conduct was not sufficiently egregious to trigger the UDTPA by opting not to enter into a written agreement with another distributor rather than finalizing an alleged oral agreement reach with the plaintiff) .

Despite the assurances it made in the January 28 letter, the defendant imposed an additional engineer certification before it would remit the outstanding balance owed under the Hwy 210 contract. This requirement, which was imposed by the defendant following completion of the plaintiff's performance and certification by the NCDOT and a third–party engineer, was not contemplated in the Hwy 210 contract or the January 28 letter. Likewise, the additional certification requirement was subject to the defendant's control, and placed it in a position superior to that of the plaintiff. The assertion that the defendant instructed its engineer to withhold certification of the work completed to avoid final payment is particularly egregious and aggravating given that the work had already been certified by the NCDOT and another engineer. See South Atlantic, 284 F.3d at 535–36. These allegations are sufficient to constitute a substantial aggravating circumstance attending the alleged breach of contract and enable the plaintiff to plausibly state a claim for relief under the UDTPA. See Hanes v. Darar, No. COA11–627, 2012 WL 707110, at *5 (N.C. Ct. App. Mar. 6, 2012)  (unpublished) (holding that "[d]efendants' retaliation against plaintiff by disabling

14

her vehicle using a 'past time payment assurance device,' allowing the vehicle to sit in plaintiff's driveway for two months before repossessing it, and accelerating the debt due under the promissory note after plaintiff filed for breach of contract constitutes substantial aggravating circumstances attending the breach of contract."). Taking the allegations in the complaint as true, the court finds that the plaintiff has stated a claim for relief under the UDTPA that is plausible and denies the defendant's motion to dismiss the same.[5]

## CONCLUSION

Based on the foregoing, the defendant's motion to dismiss is **ALLOWED** with respect to the plaintiff's second, third and fourth claims for relief pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012. The defendant's motion to dismiss the plaintiff's fifth claim for relief, however, is **DENIED.**

---

[5] Alternatively, the defendant contends that this claim for relief is barred by the economic loss rule, which generally prohibits recovery in tort for claims arising in contract. See generally N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 81, 240 S.E.2d 345, 350 (1978). This contention, although novel, will not be addressed at this stage of the proceedings because the applicability of the economic loss rule in the context of violations of the UDTPA has not been addressed by North Carolina courts. See Ellis v. Louisiana–Pacific Corp., 699 F.3d 778, 787 (4th Cir. 2012); Coker v. DaimlerChrysler Corp., 172 N.C. App. 386, 617 S.E.2d 306, 318–19 (2005) (Hudson, J., dissenting); but see Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d 614, 627 (M.D.N.C. 2006).